of True Heart Sign Co., Inc. v. Local 137. Good afternoon. This is Joseph Labuda for the appellant. In this case, Judge Wechsler erred in deciding that pre-judgment interests, post-judgment interests, and costs should not be awarded to True Heart after a jury verdict that was issued in this case. In this case, we believe that Judge Wechsler abused his discretion in terms of the denial of pre-judgment interests and didn't utilize the Wickham factors and analyze the Wickham factors as appropriate. In the Wickham case, which is another LMRA case, the court held that under the circumstances there, where there was essentially a union that had interfered with a breach of contract or a contract with a third party, was entitled to pre-judgment interest because they would have gotten those profits since the time of the actual injury. Who was complaining about the pre-judgment interest there? I'm sorry? Was this – had the trial judge at that point granted or denied the pre-judgment interest in that case? In the – in the Wickham case? In the – in the Wickham case, it ultimately was granted to the – You say ultimately. I mean, was it a review of a grant or a denial? I believe it was just on the – it was – it was granted in the original judgment.  And that was appealed to this court. Right. So that's – isn't that a major difference? Because courts are – appeals are reluctant to find an abuse of discretion when a district court rules in this area. Ultimately, in any case, the jury came back with a determination, either under Wickham or in Truard, that the party had been injured, the plaintiff had been injured, the union had done some type of injury. And I think just de facto at that point, once there's a determination outside of the court but by the jury that there's an injury, I think it follows that as a result of that injury, there has to be some type of recovery for pre-judgment interest, regardless of whether or not – Are you saying then that as a matter of law, there has to be pre-judgment interest, or is it – are we reviewing for discretion? It's under abuse of discretion, but I'd also say that there's numerous courts that we cited, including the Wickham courts and other courts, where they've said that in a breach of contract – and that's what essentially this case is, is a tortious interference – in those types of cases, you should award the interest. And there should be some explanation as to why it should not be granted. And I think the court in this situation didn't address the Wickham factors and really looked more so at – But Judge Wexler did explicitly refer to the four Wickham factors, did he not? He did refer to them, but in terms of his analysis, he really only went into the degree of speculation, which is the second factor under Wickham. And so the first thing that you have to look at is the statute, and as this court has done and Wickham and other under the statute. What's the complaint that you have on this court, that Judge Wexler should have had an extended meditation on the factors? Is that it? Well, I think there should be some analysis, one, on those factors. And without any type of analysis, it's difficult for this court to determine whether or not he abused his discretion. But ultimately, I think in this situation, given Wickham, given the statute, given the fairness, given the jury verdict, given the fact that there was a – You're arguing basically that he did not exercise his discretion appropriately, not that – and that is a tougher argument, it seems to me, than the fact that he clearly got it wrong. Here he did consider the matter. Maybe he didn't consider it to the full degree that you would like, at least explicitly, but he did consider it and reached his conclusion. I don't think there was any consideration. I think it was a simple recitation of the factors and then ultimately a determination that, in fact, he – that because of the degree of speculation on the part of the jury, which had been reduced by this court from six – Well, and I think this court should also look at its decision in Adams as well and some other decisions where they've indicated that in a breach of contract type of situation that it's more the norm to award prejudgment interest. So I'll yield the floor on that particular issue. On top of that, the issue that we have is that he awarded no costs whatsoever to us. We were the prevailing party. We didn't get any costs for the depositions, for the copying, all those costs that are by presumption awarded to us, and there has to be some determination by Judge Wexler as to why not to award those. And he just said that he felt that, you know, referencing the trial graphics chart, that being too expensive. But other than that – I mean, even if – even if that was too expensive, your argument would be that doesn't necessarily warrant no costs. Exactly. I mean, that's – that's a different matter. Right. No costs whatsoever versus some costs at a lesser amount. Right. The presumption is that we should be awarded our costs, and we got awarded nothing. And there's no articulated reason by Judge Wexler as to why we should get absolutely nothing after the jury verdict came down in favor of Truard. You also said at the outset, Judge, I didn't really understand, that you were also complaining that there's no post-judgment interest. Is that – is that what you're – are you complaining about that here? That is part of the appeal, that we should be awarded post-judgment interest as well. But the post-judgment interest is usually worked out by the parties and the clerk below. Did you do that here? That has not been done here because – But it's usually something that the parties are responsible for taking care of, particularly the lawyers. Did you? That was not done in this situation. The first thing that was done was that the 137 filed the appeal, and there was a stay of the enforcement of the judgments. So none of that occurred at this stage. You've reserved three minutes. Yes. Thank you. Good afternoon. May it please the Court. Nathaniel Charney of Charney & Associates on behalf of the Defendant Appellee, Local 137 of the Sheet Metal Workers. Speaking first to the issue of prejudgment interest, I want to – I want to talk timeliness, if I may, and then also talk on the – on the substance, on the merits. Regarding timeliness, I would – I would try and concisely pose the following proposition as consistent with all the cases that both parties have cited. The proposition is as follows. When the matter was remanded by the Second Circuit and the appellants were given the option of either remitted her for a fixed amount or vacate the damages entirely and have a new trial on damages, they had a choice at that point. If they had vacated damages entirely and a new trial on the issue of damages, they would have reopened their time to make a motion within 28 days after that for prejudgment interest. They made a decision not to. They went for the finality and repose of the remitted her. They took no chances and no risks in that regard. And therefore, under well-established case law that we've both cited, that is the operative judgment for purposes of time limits regarding prejudgment interest. The decision was made by the plaintiff's appellants to go with the definite amount of money. And at the same time, they therefore made the decision that that first judgment is the operative judgment. I think that's a – that's very clear under the case law. And by making that decision, they've given up their right to prejudgment interest. They are untimely because that is the judgment that is ascertained in a meaningful way, and therefore, that's the date where their 28 days start to run. And there – I would point out regarding the – in the reply brief, there were some new case law cited, unreported Eastern District of New York cases on the question of remitted her and the impact. I would just point out that in the Fresh Meadow case, it was only regarding post-judgment. It had nothing to do with prejudgment interest. And in the Tritola case, there was only one judgment. There wasn't a second judgment. There was a single judgment. So it's distinctly different, and the analysis doesn't apply. While we're on the subject of Tritola, though, which is cited by the appellant Refresh our recollection about the different judgments. What's the chronology exactly? Yes, Judge. The original judgment is August 23rd of 2016. That judgment explicitly says no costs and no – and makes no reference to interest. It says no costs. No reference – Of course, I apologize. August of 2013? Yes, 2013. August 26th of 2013. That's the original. That's the first judgment. The second judgment was October 29th of 2014, which is a year and two months later. That's the judgment on remitted her. So here's a very good analysis on the timeliness that is completely applicable here is, Your Honors, what's the operative date when it stops being prejudgment interest and starts being post-judgment interest? That's the date upon which the 28 days start to run. There's no question, and unless Your Honors would want to make new law, which, of course, is your prerogative, there's no question that under the current state of the precedent, the original judgment in this context is the date that prejudgment starts, stops, and post-judgment begins. It is, therefore, the operative date for the 28 days with which to make the application. They waited a year and three months or so, which is too late. And what do you think, without trying to read your opponent's mind, what do you think explains this conduct on the part of your opposing counsel? They forgot. Why would they do that? They forgot. Negligence. A lot of money, no? Well, not at the interest rate. At the end of the day, Your Honors, not at the interest rate that should appropriately be applied. It's actually not that much money, but they forgot. How much are we talking about? We're talking about something in the neighborhood of $500 for every three-quarters of a year or so. I'm ballparking there. But I believe they just forgot. And maybe they didn't understand or know, counsel or the party didn't understand or know this distinction between a remitter and vacating entirely, and, therefore, when they made their decision to accept the remitter, they hadn't done the research and they didn't understand that the Second Circuit had clearly established that this was the decision and choice they were making. I want to mention that there's an argument in the reply brief that's brought up for the first time in the reply brief that, oh, we couldn't have made the motion based on the original judgment because it would have been thrown out as premature. That's just totally inaccurate. Federal Rule of Appellate Procedure 4A4A4, believe it or not, 4A4A4, stands for the very distinct proposition that the application for prejudgment interest would have the trial court would have kept jurisdiction to hear that. That's Federal Rule of Appellate Procedure 4A4A4. And all of the three unpublished decisions cited for the proposition that it was premature, three unpublished decisions, I believe two of them from the Eastern District, all of them, their motion was timely filed. The motion was timely filed. And the court in one of the cases said, I'm not ready to decide yet. The court in another case said, I'm going to reject it with the opportunity to renew. We need more information. And the Patterson case, of course, is this incredibly complicated claims adjustment case where they said, wait, it's way too early. We don't know enough. Thank you for filing the timely motion. That's an important distinction. Kennedy. What about the question of costs? Okay. Is that the same argument or does it stand on a different footing? In the first instance, it's the same argument as I just laid out regarding the application for prejudice. Same exact argument. And in the brief, I refer back to it. There's a second argument that's even better. I mean, more clear-cut. I shouldn't say better. It's just more absolute. And that's Local Rule 54.1a. Local Rule 54.1a in the Southern District of New York, it requires you to make your application for costs within 30 days of the appeal being decided. Clear as day. Could not be clearer. Doesn't — and it makes an exception if you can show good cause. But it's absolute. And, Your Honors, I propose that that's de novo review for you in terms of application of that Local Rule 54.1a. The appeal was decided on August 20th of 2014. The application was made at the earliest. It wasn't even actually made on October 8th. But at the earliest, we could contrive it to be made as October 8th, well beyond the 30 days. So putting aside the timeliness, because finality and repose says the first judgment starts the clock, which I think aptly wins on that, even clearer and more obvious is this notion that they waived under the rules. And I'll close with one final — well, actually, I have two more things, if I may, Your Honors. On costs, all of the cases cited by the appellant in their moving — in their appeal brief as well as their reply brief, every single one, is a case where the trial court granted costs. There's no case in those briefs where the Second Circuit said you should have granted these particular costs because it is left to the sound discretion of the trial court. Judge Wexler was there. Your Honors, I tried the case. I was there in the courtroom with Judge Wexler through the whole thing. This is exactly his imprimatur and his wheelhouse to determine whether or not costs should be paid, whether they're appropriate. And the burden on costs is very large. Let's not overlook the fact that you don't just get the costs. You have to show, with substantial evidence, their — their proper and appropriate costs. Now, I went through in our — accepting that, you know, some of the costs were trial graphics and technology and maybe even the videos and deposition transcripts were excessive because they hadn't been supported. Travel and parking expenses for depositions and for witnesses on trial is normal, as is the district court filing fee and the witness fees. I mean, these are not substantial amounts. The docketing fee, that's — that's just normal costs, isn't it? Sure, it's normal costs if they had — if they had timely made the application for costs, because I believe waiver applies. But even then, it's still within the sound discretion of the trial court to award the costs. There's no — there's no rule that this Court has ever made that you definitely get them. There's no such rule. It's pretty close, isn't it? The — quote, "...the normal rule obtaining in civil litigation, not an exception, is that in light of the general, when a prevailing party is denied costs, the district court must articulate its reasons for doing so." Unquote. Right? Whitfield against Scully? He — he did articulate his belief that the costs were excessive, and I — I forgot the — It was enough. It was enough. I believe it was more than enough. And not only is it more than enough, the — the record that's submitted in the joint appendix is rather remarkable in how imprecise the application for costs was. You know, $1.50 for a cup of coffee for the guy who's, you know, using the video monitor? You can't even — Judge Wexler couldn't even parse that out. I — I — if I may, I want to close with one point, going back to prejudgment interest, if the Court will indulge me. I believe that Mr. Labuda is arguing and asking for the Second Circuit to make a bright line rule that you necessarily get prejudgment interest in a secondary boycotting case. I believe that's the argument. Secondary boycotting is not breach of contract. Secondary boycotting is secondary boycotting. There is no rule. It would be remarkable, and I urge the Court not to entertain and certainly not to create precedent, which creates that bright line rule. Thank you, Your Honor. All right. Mr. Labuda, you reserve three minutes. Yes. Thank you. So, first off, we're not asking for a bright line rule. We just think under the circumstances here with Wickham, given the fact of the jury verdict and the remitter, that it's appropriate to award the prejudgment interest. So let me go back in terms of the timeline of things, you know, just so the Court has a sense of the determinations. So there was a request by Truard, by the appellant, for prejudgment interest on September 5th, 2013. There was a stay of the judgment on September 6th, 2013, that was issued by Judge Wexler. This Court vacated, vacated the monetary award in the case. And, you know, there was a lot of spin last night. There was some spin this morning or just now with respect to the determination from this circuit. It didn't say that it was only vacated, it would only be vacated unless we decided to take the remitter. The judgment was vacated. There was no judgment. And this Court has held that when there's a vacature of the judgment, it's a nullity. There's no judgment at all. So I think that's why the whole issue of timeliness doesn't pop into play at all. And that's in the Appendix A32, is the final decision from the Court, the final decision on the Court with respect to the vacature. And I think it's very clear. So there was no judgment when it went back to Judge Wexler. With respect to 54-1A, I think it's very clear as well that, one, before there was a judgment that had been awarded, there was a request and a schedule set forth by Judge Wexler with respect to the pre-judgment interest, the post-judgment interest, and the costs. So to basically say that the judge is not allowed to extend out the time, I think that's what the appellee is trying to argue, is that Judge Wexler didn't have the authority to extend out and allow for a briefing schedule. The parties discussed it in a settlement conference before Judge Wexler, a court conference before Judge Wexler. And the record is replete with him discussing the fact of our request for it, as well as his timeline and briefing schedule for it. Let's consider the hypothetical that you prevail completely here. What would the decreto language consist of? What is it that you want us to do? We would like you to order Judge Wexler to determine the pre-judgment interest and, I guess, if the parties can't agree on the post-judgment interest, to issue an award on that as well. And then with respect to the costs, I think you have to remand it back to Judge Wexler for that because there's no determination in terms of what he believes is appropriate or not. Let me put it another way. In the best of all possible worlds, what are we talking about? How much are we talking about? Well, in the best of all possible worlds, if Judge Wexler were to determine that, just like Wickham did, that the interest rate should be 9% because you have the analogous, you're talking hundreds of thousands of dollars. So I'm sorry? Yes. Yes. So in the record, when we opposed their bond, opposed the stay, we articulated that based on the 9% interest rate that was awarded in Wickham, that the interest would be somewhere in the neighborhood of $231,000, I believe. But it's hundreds of thousands of dollars. And in this situation, because TrueArt was aggrieved and there is precedent in terms of having that be the standard interest rate for an LMRA case, that that would be appropriate. So that's what we're talking about. We are talking about substantial sums of money. Thanks very much. Okay. Thank you. We reserve the decision.